FIRST NATIONAL BANK OF JOLIET, Trustee, Plaintiff-Appellee, *v.*
MARGOT M. HAMPSON *et al.*, Defendants-Appellees.—(PATRICIA
HENDRICKSON, Defendant-Appellant; THOMAS CLARK WALSH *et al.*,
Defendants.)

Third District No. 79-924

Opinion filed September 17, 1980.

Louis E. Olivero and Clifford E. Lund, both of Peru, for appellant.

David E. Murray, of Ward, Ward, Murray, Pace & Johnson, of Sterling, for appellee Margot M. Hampson.

Lawrence E. Varsek, of Davis, Varsek & Dystrup, P. C., of Joliet, for appellee First National Bank of Joliet.

Mr. JUSTICE BARRY delivered the opinion of the court:

The plaintiff, First National Bank of Joliet, as trustee, filed suit in the Circuit Court of Will County to have the declaration of trust executed by Edward N. Walsh, Sr., interpreted. In reply the defendant Patricia M. Hendrickson filed four affirmative defenses, the effect of which was to have the alleged trust document declared invalid. Briefly, these affirmative defenses asserted that the alleged trust document (1) created no trust, (2) violated the rule against perpetuities, (3) was ambiguous, and (4) restrained marriage. Following a hearing on plaintiff's motion for summary judgment on two of the affirmative defenses and an evidentiary hearing on the remaining two affirmative defenses, the trial court ruled that the alleged trust document was a valid trust. The defendant Patricia M. Hendrickson has appealed from that adverse judgment.

In 1918 Edward N. Walsh, Sr., married Mae Kelly. Three children were born of the marriage: Patricia Hendrickson, the defendant, Edward Walsh, Jr., and Margot M. Hampson. In 1931 Edward N. Walsh, Sr., purchased an 80-acre farm located in La Salle County, which was placed in his wife's name. She died in 1933. In 1957 Walsh, Sr., desired to sell his La Salle County farm and obtained deeds from Edward Walsh, Jr., and Margot M. Hampson, turning their interests over to their father. Patricia Hendrickson, his other daughter, refused to voluntarily convey her interest in her mother's farm to him. Walsh, Sr., then instituted a partition suit and purchased the farm at the subsequent judicial sale, paying his daughter

Patricia $12,000 for her interest. This resulted in straining the personal relationship between the defendant Patricia Hendrickson and Walsh, Sr. In April of 1966 Walsh, Sr., gave $12,000 each to his other two children, Edward Walsh, Jr., and Margot M. Hampson. Prior thereto, on January 2, 1965, Edward N. Walsh, Sr., executed the declaration of trust which was the subject matter of the proceeding below resulting in this appeal.

The declaration of trust executed by Edward N. Walsh, Sr., as settlor named himself as trustee. Upon creation of the trust Walsh, Sr., transferred and conveyed certain itemized assets to himself as trustee, to wit: the family residence, three farms, and a checking account at the plaintiff's bank. The trust expressly provided that the settlor had not made any provision for Patricia M. Hendrickson, his daughter, because previous provision had been made in her behalf. The trust provided the income therefrom be paid to the settlor Walsh, Sr., during his lifetime and that the trust should continue during the lives of his second wife and his two children, Walsh, Jr., and Margot M. Hampson, with the income being paid to his second wife during her life and then to his two children during their lives. In the event of the death of either of his two named children, the income was directed to be paid to the descendants of those two children per stirpes, and in the event no descendants were living at the time of the named deceased's child's death, to the survivor of his two named children. The trust further provided several alternative termination contingencies.

On May 10, 1972, the settlor Edward N. Walsh, Sr., died. The plaintiff bank as trustee sought an interpretation of the trust which the defendant Hendrickson urged was invalid. As aforesaid, the trial court upheld the validity of the trust.

On appeal the defendant Hendrickson has presented five issues which she phrases as follows:

1. Whether any interest in the subject matter of the trust passed to any beneficiary before the death of settlor and, therefore, the intended trust was testamentary and therefore invalid because it failed to comply with the requirements of the statute of wills.

2. Whether article III, clause B.1, subparagraphs (a) and (b), violate the rule against perpetuities, because they provide that the interests created therein will not vest or fail to vest within 21 years after the death of some life in being at the creation of the interest. Whether the trust is, therefore, void and the corpus should be distributed according to the laws of intestacy.

3. Whether the modification of the rule against perpetuities (Ill. Rev. Stat. 1969, ch. 30, pars. 190 through 196) has any application to the Edward N. Walsh trust.

4. Whether article IV of the Edward N. Walsh, Sr., trust is a savings clause.

5. Whether article III, clause B.2, of the trust is contradictory and

ambiguous, and, therefore, the settlor's intention must be determined by the use of the rules of construction. When so viewed the evidence at trial was insufficient to overcome the presumption against disinheritance. Therefore, the ruling of the trial court on this issue is contrary to the manifest weight of the evidence.

■■ The defendant's first theory that the settlor's trust is invalid is that no interest in the subject matter of the trust passed to any beneficiary before the settlor's death and accordingly the trust was testamentary, not *inter vivos*, in character, and failed to comply with the formalities of the statute of wills.

> "Among the essential elements for the creation of any express trust is the definite and complete present disposition of the trust property, even though enjoyment of such property may take effect at a future time. It is essential to the creation of an express trust that the settlor presently and unequivocally make a disposition of property by which he divests himself of the full legal and equitable ownership thereof. He may make himself the trustee or one of the trustees, thus retaining the legal title in whole or in part, or by making himself the beneficiary or one of the beneficiaries of the trust, he may retain the equitable ownership in whole or in part, but he cannot retain the full legal and equitable ownership.
>
> The legal title must be definitely reposed in the trustee, whether he is the trustor or another." (76 Am. Jur. 2d *Trusts* §35 (1975).)

We believe the settlor's trust complied with the requisites for validity in this case. Following execution of the trust document the settlor conveyed the four parcels of real estate to himself as trustee and thereby parted with legal title. He also transferred a checking account to himself as trustee. These conveyances were so accomplished in fact, and were not illusory. At a later date he transferred one of the parcels of real estate out of the trust and did so by conveying in his capacity as trustee and not individually. Each year subsequent to the creation of the trust Walsh, Sr., filed fiduciary income tax returns as trustee separately from his own individual income tax returns. The trust instrument further provided that upon Walsh, Sr.'s death the benefits derived from the various properties which had been transferred to a trustee were to pass to other beneficiaries. As was stated in *Merchants National Bank v. Weinold* (1956), 12 Ill. App. 2d 209, 138 N.E.2d 840, "[w]e have some difficulty in viewing as a nullity an instrument which not only purports to place legal title in a trustee but to do so for the benefit of several persons in addition to the settlor; the interests of those other persons would seem in reason to continue until destroyed by the settlor in the exercise of the reserved powers and control." (12 Ill. App. 2d 209, 218-19, 138 N.E.2d 840, 845.) The interests of the beneficiaries other than Walsh, Sr., are vested equitable remainders subject to a number of conditions. (*Farkas v. Wil-*

*liams* (1955), 5 Ill. 2d 417, 125 N.E.2d 600.) Nevertheless, the interests passed to the beneficiaries immediately upon the declaration of trust even though technically subject to divestment. "Such merely postpones their active enjoyment or possession thereof, not the acquisition thereof." (*Merchants National Bank v. Weinold* (1956), 12 Ill. App. 2d 209, 219, 138 N.E.2d 840, 845.) The language of the instrument in the case at bar supports a conclusion that the beneficiaries acquired a present interest in the trust res. *Farkas v. Williams*; *Merchants National Bank v. Weinold.*

■■ The defendant also argues that the trust in this case is an attempted invalid testamentary disposition because of the extraordinary degree of control retained by Walsh, Sr. The language of the trust does reserve the power to modify, amend, or terminate the trust and the powers which the absolute owner would have over the property, to the trustee, and while it is true that the trustee and the settlor in this case are the same person, Walsh, Sr., the powers transferred to the trustee are held in a fiduciary relationship. These broad powers in the trustee cannot be attributed to the settlor even though they are one and the same person. The reservation of such broad powers to the settlor himself has been held to make the trust illusory and invalid. (*Kelly v. Parker* (1899), 181 Ill. 49; *Roth v. Michalis* (1888), 125 Ill. 325.) The granting of such powers to the trustee, however, even if the trustee and the settlor are the same person will not invalidate the trust. (*Johnson v. La Grange State Bank* (1979), 73 Ill. 2d 342, 383 N.E.2d 185.) As the court stated under similar facts in *Farkas v. Williams* (1955), 5 Ill. 2d 417, 426, 125 N.E.2d 600, 605, "the power of control which the settlor has as trustee is not an irresponsible power and can be exercised only in accordance with the terms of the trust." Accordingly, we agree with the trial court that the trust is not an invalid testamentary disposition, but is a valid revocable *inter vivos* trust.

The defendant next contends that certain terms of the trust violated the rule against perpetuities. The rule against perpetuities applies in the same manner to both equitable and legal estates and must be considered with regard to the various equitable remainders created by Walsh, Sr., in his trust document. The rule simply stated is that "a future interest which, by any possibility, may not vest within twenty-one years after a life or lives in being at the time of its creation is void at its inception." Moynihan, Law of Real Property 204, (1962).

■■ The trust document was organized into two trusts, and the arguably violative portions of the Walsh, Sr., trust B are as follows:
 ."ARTICLE III,
 B.1 * * * The trust shall terminate upon the first to occur of the following events, providing my wife, GENEVIEVE C. WALSH, is then deceased:
 (a) the expiration of twenty-one (21) years from the date of

death of the last survivor of EDWARD N. WALSH, JR., and MARGOT M. HAMPSON.

(b) upon the date my youngest grandchild surviving MARGOT M. HAMPSON and EDWARD N. WALSH, JR., shall attain the age of forty (40) years, whereupon the Trustee shall pay and distribute the entire trust estate to the surviving descendants of EDWARD N. WALSH, JR., and MARGOT M. HAMPSON, per stirpes."

It is not contended that Walsh, Sr.'s trust A violates the rule against perpetuities, but it is argued that the violative portions of trust B invalidate the entire trust document. It is conceded by the plaintiff that article III, clause B.1(b), possibly violates the rule. We agree that it does. However, article III, clause B.1(b), is severable from the remainder of trust B and separate and independent from trust A. It can be deleted from the trust without affecting the remainder of trust B or the remainder of the entire trust. (*Barret v. Barret* (1912), 255 Ill. 332, 99 N.E.2d 625.) Where invalid portions can be separated from the valid portions and still give effect to the scheme of the settlor, the invalid portions will be disregarded and those that are valid upheld. (*Johnson v. Preston* (1912), 226 Ill. 447, 80 N.E.2d 1001.) We believe the invalid portion of trust B can be deleted and the remainder of the trust upheld in this case.

■■ The defendant Hendrickson also argues that article III, clause B.1(a), violates the rule against perpetuities. The trial court adopted a meaning for the term "last survivor" of Edward N. Walsh, Jr., and Margot M. Hampson. By his interpretation the rule of perpetuities is not violated. Though we agree with the defendant that an interpretation that the "last survivor" to mean the last to survive of the stirpetal heirs of Edward N. Walsh, Jr., and Margot M. Hampson would violate the rule, we believe the trial court's interpretation of "last survivor" to literally mean the last to survive of the settlor's two named children to be the more reasonable construction of the disputed language. Moreover, this interpretation is consistent with the inference that the settlor intended to accomplish a legal act in his *inter vivos* trust rather than an illegal one. (*Cahill v. Michael* (1942), 381 Ill. 395, 45 N.E.2d 657; *Miller v. O'Neil* (1977), 47 Ill. App. 3d 340, 361 N.E.2d 1165.) In *Bank of California v. Ager* (1941), 7 Wash. 2d 179, 109 P.2d 548, a similar interpretation of the meaning of the "last survivor" to be the longest liver of the persons named was adopted. The termination provisions of article III, clause B.1(a), were correctly interpreted by the trial court to preclude a violation of the rule against perpetuities.

■■ We have also considered article IV, clause A, of the Walsh, Sr., trust document, which purports to be a general savings clause and was intended to cure any perpetuity violations which might be present in

other clauses of the trust. The trial court did not rule as to the effect of this clause. Although we have concurred in the trial court's interpretation of article III, clause B.1(a), as not being violative of the rule against perpetuities, we will also consider the effect of the general savings clause.

Article IV, clause A, of the trust document provides:

> "Each and every trust, if any, still in existence on the day twenty-one (21) years after the death of the last to survive of the Settlor and of all the beneficiaries herein named or described who are now living, shall forthwith terminate."

The defendant contends that this clause cannot be construed as a general savings clause to validate any violations of the rule against perpetuities. We disagree. Even though the clause is not specifically labeled a savings clause, similar language has been construed to operate as a savings clause to protect against any perpetuities rule mistakes. (*In re Estate of Reeves* (1946), 393 Ill. 272, 65 N.E.2d 815.) Defendant argues that an interpretation of the words "last to survive" here must be consistent with the words "last survivors" in article III, clause B.1(a). We disagree. Clause A of article IV is obviously a savings clause, and the intent of the settlor was clearly to measure the maximum duration of the trust in the event that it might violate the rule against perpetuities. As aforesaid, we believe this clause is a savings clause and that it will operate to save the settlor's trust in the alternative that any of the prior termination provisions of the trust run afoul of the perpetuities rule.

Inasmuch as we have held that the trust does not impermissibly violate the common law rule against perpetuities, we need not decide whether the Illinois statute concerning perpetuities is applicable. By its own terms the Statute Concerning Perpetuities (Ill. Rev. Stat. 1979, ch. 30, par. 195) provides that the statutory modification of the rule against perpetuities does not apply to a trust that is valid at common law.

The defendant's final contention is that the trial court's ruling, that the trust document did express the settlor's intention to exclude the defendant from the benefits of the trust, is against the manifest weight of the evidence. From a reading of the trust document the plain meaning of the words used by the settlor clearly demonstrate that he intended for the defendant Hendrickson to receive nothing under the terms of the trust.

For the reasons stated the judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

ALLOY, P. J., and STENGEL, J., concur.