2022 IL App (2d) 210408-U
Nos. 2-21-0408 & 3-22-0037 cons.
Order filed May 24, 2023

NOTICE: This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE of DIANE LANDGREN, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 15-D-623 |
| | ) | |
| ROY LANDGREN, | ) | Honorable |
| | ) | Linda E. Davenport, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

ORDER

¶ 1    *Held*:  Trial court erred in dismissing motions seeking an accounting and distribution of marital assets where marital settlement agreement created express trust, naming respondent as trustee, and petitioner adequately pleaded breach of fiduciary duties; while petitioner's claim of damages was speculative, it was not apparent that she could not prove a set of facts that would entitled her to prevail, rendering dismissal with prejudice inappropriate; petitioner's argument that she should have been allowed to amend her complaint while this appeal was pending is moot.

¶ 2                                   I. INTRODUCTION

¶ 3    Before this court are two consolidated appeals. In the first (No. 2-21-0408), petitioner,

Diane Landgren, appeals an order of the circuit court of Du Page County dismissing two motions

she filed relating to the dissolution of her marriage to respondent, Roy Landgren. Respondent moved to dismiss in accordance with section 2-619.1 of the Civil Practice Law (735 Ill. 2d 5/2-619.1 (West 2020)). Regarding the first appeal, we reverse. In the second (No. 3-22-0037), petitioner appeals the trial court's denial of her motion to amend her complaint to add two additional counts. We dismiss the second appeal as moot. We remand this cause for further proceedings.

¶ 4                                    II. BACKGROUND

¶ 5     Petitioner filed a petition for dissolution of marriage on March 25, 2015. The parties entered into a marital settlement agreement (MSA), and the trial court entered a final decree on March 7, 2016. The decree incorporated the MSA by reference, but it was not made part of the record due to the parties' desire for confidentiality. The MSA contained, *inter alia*, the following provisions:

> "A. ROY shall hold DIANE's beneficial interest in the Business Entity [Greenhouse Group, LLC] as a constructive trustee for and on behalf of DIANE until such time as the Business Entity, or portion thereof, is sold, transferred or terminated, or in any manner effected such that ROY no longer has an ownership interest in the Business Entity and DIANE has received any and all distributions, return of capital or other liquidation funds in compliance with this Agreement.
>
> * * *
>
> With respect to any option given to a member under the Operating Agreement, ROY shall follow DIANE's direction regarding her 50% interest therein (i.e. purchase of another member's interest, sale of her interest, participation in a capital call or other options presented), to the extent allowed by the Operating Agreement.

B. ROY shall provide DIANE, upon his receipt, and [*sic*] any and all documents received in connection with Greenhouse Group, LLC or any successor business/entity, including but not limited to statements, correspondence, evidence of transactions, distributions, income, sale, transfer, liabilities and withdrawals.

\* \* \*

In the event there are request [*sic*] or demands made upon ROY by the Greenhouse Group, LLC or successor business/entity for a vote, decision, capital call, contribution or payment, ROY shall immediately notify DIANE and provide her with all information and documentation provided to ROY."

It later reiterated:

"[C.](iii) ROY shall hold DIANE's beneficial interest in the Business Entity as a constructive trustee for and on behalf of DIANE until such time as the Business Entity, or portion thereof, is sold, transferred or terminated, or in any manner effected such that ROY no longer has an ownership interest in the Business Entity and DIANE has received any and all distributions, return of capital or other liquidation funds in compliance with this Agreement.

It further stated:

"ROY and DIANE acknowledge and warrant that they have disclosed to one another all property in which they have an interest, individually or jointly, present or contingent, and any property held by another that could be considered non-marital, marital or divisible under the terms of the PNA and the [Illinois Marriage and Dissolution of Marriage Act] for their benefit in connection with the negotiation of this Agreement. If, after entry of the Judgment for Dissolution of Marriage, it is discovered that additional

property that would otherwise be considered marital under the PNA that is not set forth in this Agreement was owned by ROY or DIANE, whether individually, jointly with another, in trust for his or her benefit, or held by another for his or her benefit at the time of the Triggering Date, or that the values stated for any asset is below that actual value of the asset at the time of entry of the Triggering Date, one-half (1/2) of the value of such additional property at the time of the Triggering Date or such difference between the stated and actual values at the time of the Triggering Date shall become immediately payable (or transferable) from the nondisclosing party to the other party. However, no such division shall take place unless the undisclosed asset exceeded $10,000 in value at the time of entry of Judgment for Dissolution of Marriage. This paragraph shall not apply to the value of the parties' respective personal property and furniture/furnishings."

Finally, the MSA stated:

"Diane represents and warrants * * * that she has been fully advised of her rights in this case pending between the parties; and she is conversant with all of Roy's wealth, property, estate, liabilities, and income, and the value thereof. Whereas the parties acknowledge that any lack of discovery was at their specific instruction and that they were fully informed of the fact they had the right to such information and that legal means are available to secure any and all information that may be necessary to determine facts relating to any matter of concern in the dissolution of the parties' marriage. The parties have knowingly waived their right to formal discovery including but not limited to interrogatories, depositions, forensic accounting and the like."

¶ 6    Petitioner alleges that respondent acquired an interest in Greenhouse Group, LLC (Greenhouse) during the marriage. Greenhouse invested in three medical cannabis dispensaries in

Illinois. Respondent disclosed that they held a 9.7% interest in Greenhouse. During the marriage, respondent invested $300,200 into Greenhouse, and subsequently both parties invested an additional $213,000 each. Greenhouse went through several name changes and mergers, resulting in it having several subsidiaries in various states. Greenhouse eventually became a subsidiary of GR Companies, Inc. (GR). Petitioner asked that her interest in GR be transferred directly to her; however, this could not be accomplished until "after a rollup set to occur by February 2019." Petitioner received 60.91914 shares of GR on July 26, 2019. She was given no documentation regarding how that amount was determined.

¶ 7     In July 2020, Curaleaf Holdings, Inc., acquired Greenhouse for $830 million. It issued new stock to the parties. Petitioner alleges that original Greenhouse owners received additional cash distributions and bonuses. Respondent was listed as an original owner. The parties' accountants requested documents from respondent to conduct a financial analysis. These documents indicated that respondent's interest in Greenhouse had been 19.4% rather than the 9.7% disclosed in the MSA. Additional documents indicated that respondent held a 19.4% interest in three limited liability companies that operated Greenhouse's individual dispensaries.

¶ 8     Petitioner filed two motions on October 13, 2020. The first was titled "Motion For An Accounting And To Compel Disclosure Pursuant To The Judgment For Dissolution Of Marriage" (motion for an accounting). In it, petitioner alleged that respondent was the trustee of a constructive trust, of which petitioner was the beneficiary. The *res* was the parties' shares of Greenhouse. She also alleged that respondent failed to fully disclose his interest in Greenhouse. Also, respondent failed to provide petitioner with adequate documentation and information regarding Greenhouse's business, as required by the MSA. This motion sought an accounting of all cannabis-related investments and the turnover of documentation regarding Greenhouse and

related entities. The second motion was dubbed a "Motion to Distribute, to Allocate Undisclosed or Hidden Assets and for Other Relief" (motion to distribute). The latter requested that respondent disgorge half of all Greenhouse-related investments, half of all undisclosed or misrepresented marital assets, and half of all assets that were not divided equally pursuant to the MSA.

¶ 9 Respondent moved to dismiss both motions pursuant to section 2-619.1 of the Civil Practice Law (735 Ill. 2d 5/2-619.1 (West 2020)). Regarding the motion for an accounting, as affirmative matter (see 735 Ill. 2d 5/2-619 (West 2020)), respondent asserted that petitioner's motion for an accounting was an attempt to reopen discovery which was both untimely and waived in the MSA. Respondent also asserted that petitioner failed to plead a fiduciary duty on his behalf (see 735 Ill. 2d 5/2-615 (West 2020)). As for the motion to distribute, respondent asserted that he held no fiduciary duty to petitioner and that the parties' waiver of discovery and attestation of knowledge defeated any claim concerning purportedly undiscovered assets. Respondent also argued that petitioner failed to allege any damages.

¶ 10 The trial court first stated that petitioner had failed to state a cause of action. It then explained that petitioner's attempt to seek discovery predating the dissolution of marriage was akin to a section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2020)). Petitioner moved to reconsider. In denying this motion, the trial court stated that petitioner could have conducted discovery prior to entry of the judgment of dissolution. It noted that petitioner never contacted Greenhouse to ascertain the nature of her interest and that she did not do anything until well after she received a check for $2500 in 2019. The trial court added,

"Now if there's a basis that he didn't turn over documents, that is a petition for rule to show cause. And if there's an enforcement issue of the underlying judgement, that is something

that can actually be going forward. But in terms of opening up anything, no. I've said before that I didn't think it met the criteria under 1401."

Petitioner appealed.

¶ 11  Following the denial of her motion to reconsider, petitioner moved to amend her complaint to add two counts. One new count sought to plead a claim for "a statutory accounting under the Illinois Trust Code" (see 760 ILCS 3/401 (West 2016)). The second requested a rule to show cause based on respondent's purported noncompliance with the MSA. The motion to amend was filed July 16, 2021. On July 28, 2021, petitioner filed her notice of appeal initiating her first appeal in this case. The trial court ruled on petitioner's motion to amend on January 4, 2022. In its ruling, the trial court determined that it could not proceed on the motion to amend while petitioner's initial appeal was pending.

¶ 12  Petitioner appealed this ruling as well. Petitioner's second appeal was filed in Du Page County after it became a part of the third appellate district. The supreme court, in an exercise of its supervisory authority, ordered the second appeal to be transferred to this court and consolidated with petitioner's initial appeal.

¶ 13                                        III. ANALYSIS

¶ 14  Before this court are three issues. First, we must determine whether the trial court properly dismissed petitioner's request for an accounting. Second, we must assess the propriety of the trial court's dismissal of petitioner's motion to distribute. Third, we must also address the trial court's denial of petitioner's motion to amend her complaint. As these issues come to us following successful motions to dismiss, our review is *de novo*. *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006).

¶ 15                               A. Motion For An Accounting

¶ 16    Petitioner first contends that the trial court erred in dismissing her motion for an accounting.  In addition to requesting an accounting, this motion also requested respondent turn over various documents related to the parties' investments in Greenhouse.

¶ 17    As a preliminary matter, we agree with petitioner that the MSA creates an express trust, even though it erroneously labels it a constructive trust.  At the time the parties entered into the MSA, creation of an express trust required the following:

> "(1) intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor or by circumstances which show that the settlor intended to create a trust; (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee." *Eyechaner v. Gross*, 202 Ill. 2d 228, 253 (2002).

"A trust 'is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.' " *Id.* (Emphasis omitted.) (quoting Restatement (Second) of Trusts § 2 (1959)).  Here, all the necessary elements of a trust appear in the record.  "A trustee owes a fiduciary duty to the beneficiaries of a trust and must carry out the trust according to its terms and to act with the highest degree of fidelity and good faith." *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 31.

¶ 18    First, the parties' intent to create a trust may be shown by a declaration of the settlor manifesting that intent. *Eyechaner*, 202 Ill. 2d at 253.  The MSA states, "ROY shall hold DIANE's beneficial interest in the Business Entity as a constructive trustee for and on behalf of DIANE."  Such a plain statement is a more than adequate manifestation of the parties' intent to create a trust.  Second, "a definite subject matter or trust property" must exist. *Id.*  The parties' interest in

Greenhouse Group is identified as the subject matter of the trust. Third, a trust requires "ascertainable beneficiaries." *Id.* Diane is identified as such. Fourth, there must be a trustee (*Id.*), which is set forth as Roy. Fifth, there must be "specifications of a trust purpose and how the trust is to be performed." *Id.* The MSA specifies that Roy must follow Diane's directions regarding her 50% interest and that he must consult her and provide her with certain documents and information. Sixth, the property must be delivered to the trustee. *Id.* By signing the MSA, Roy effectively took delivery of the trust *corpus* and changed his relationship to that portion of Greenhouse Group held for Diane's benefit. See *Shakman v. Department of Revenue*, 2019 IL App (1st) 182197, ¶ 34; *First National Bank of Joliet v. Hampson*, 88 Ill. App. 3d 1057, 1061 (1980). Accordingly, all elements exist for the creation of an express trust.

¶ 19 We find it of no moment that the MSA erroneously refers to a constructive trust. As respondent correctly points out, a constructive trust is not something one contracts for, it is a judicial remedy. *Swanson v. Randall*, 30 Ill. 2d 194, 199 (1964) ("An express trust is based upon the intention of the parties, while a constructive trust is a distinctly different concept. It arises, not out of an agreement or intention, but by operation of law to prevent unjust enrichment."). However, we will only decline to give effect to a provision in a contract if we are unable to ascertain the relevant intention of the parties. See *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30-31 (1991). Here, it would be difficult to conclude that the MSA was actually ambiguous, despite the reference to a constructive trust. Since a constructive trust is a judicial remedy, *neither* party could have understood the MSA as creating a constructive trust. Moreover, the MSA goes through the steps of creating an express trust, naming a trustee, beneficiary, and *res*, imposing duties on the trustee, and manifesting an intent to create a trust. An ambiguity exists only where a contract is susceptible to different interpretations. *Epstein v. Yoder*, 72 Ill. App. 3d

966, 973 (1979). We simply cannot conclude that one party understood the MSA to create an express trust while the other party believed it to create a judicially imposed remedy, that is, a constructive trust. The only reasonable interpretation is that the MSA created an express trust.

¶ 20    Respondent contends that petitioner forfeited this issue by arguing that the MSA created an express trust for the first time on appeal. See *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). We disagree. Though petitioner used the term "constructive trust" during proceedings in the trial court, it is clear that she was referring to an express trust at the time. For example, in her motion for an accounting, petitioner alleged that the MSA provided that her interest was "held in constructive trust by ROY." Thus, she was arguing that the trust was created by the MSA, that is, that it was an express trust. Similarly, in response to respondent's motion to dismiss, petitioner asserted that the MSA created a fiduciary relationship between her and respondent when "Roy was assigned 'to hold Diane's *beneficial* interest in the Business Entity as constructive trustee.' " Hence, the issue was raised in the trial court.

¶ 21    Having voluntarily acceded to his role as trustee in the MSA, respondent would now render his obligations meaningless by depriving petitioner of any remedy for a breach of his fiduciary duties. If we were to allow petitioner's waiver of discovery to stand in the way of an accounting, petitioner would have no remedy for a breach of those duties. To the extent the discovery waiver would bar an action on the MSA, petitioner is left with no adequate remedy at law. See *Horwitz v. Sonnenschein Nath & Rosenthal*, 2018 IL App (1st) 161909, ¶ 44 ("[A] legal remedy is adequate if it makes the plaintiff whole for the breach of contract—if it awards the plaintiff the difference between what he deserved under the contract and what he received under the contract."). The lack of an adequate remedy at law is normally a prerequisite to maintaining an action for an accounting. *People ex rel. Neil F. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 500-01 (1986). However, an

adequate remedy at law does not necessarily prohibit a request for an accounting; "[c]ourts of equity have jurisdiction to compel an accounting, although the complainant has an adequate remedy at law, where fiduciary relations exist ***."  (Internal quotation marks omitted.) (Emphasis added.) *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 78-79 (1994).  The claim that there is an adequate remedy at law that does not require an accounting fails to recognize the inherent rights of beneficiaries in trust proceedings.  See *Bennett v. Weber*, 323 Ill. 283, 296, (1926) ("The beneficiaries of a trust have a right to demand an accounting from the trustee, and the enforcement of that right is a proper subject of equity jurisdiction, *People v. Bordeaux*, 242 Ill. 327 [1909].").  See also *Bordeaux*, 242 Ill. at 334:

> "The trust and fiduciary relation existed, and, so far as Bordeaux was concerned, the inhabitants of the village had a right to demand an account, and the enforcement of that right was an ordinary and proper subject of equity jurisdiction.  Where such a relation exists between the parties and the duty rests upon defendant to render an account, a suit in equity for accounting is proper." ***  Where a trust is involved a court of equity is not necessarily deprived of jurisdiction by the existence of a remedy at law."

¶ 22    In addition, petitioner was required to plead at least one of the following: "(1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature."  *Id.*  Here, petitioner has pleaded facts sufficient to satisfy two of these elements.  First, as above, she had pleaded a fiduciary relationship between the parties.  Further, petitioner pleaded that despite having disclosed holding a 9.7% interest in Greenhouse, subsequent documentation show he actually holds a 19.4% interest.  According to the MSA, as trustee, respondent must provide to petitioner "all documents received in connection with Greenhouse Group, LLC or any successor business/entity."  Despite this

obligation, respondent has not—according to the complaint—provided any documentation that explains this discrepancy. Thus, petitioner has pleaded a breach of respondent's fiduciary duties. Moreover, petitioner has pleaded facts that indicate a discrepancy in the parties' interest in Greenhouse, as represented to her, and the interest held by respondent. Petitioner suggests that this difference may have resulted from opportunities that had been denied to her due to respondent's management of the trust. Second, given respondent's failure to provide adequate documentation for petitioner to understand the nature of the parties' investment and in light of the discovery waiver and respondent's alleged breach of warranty regarding same, a need for discovery is obvious.

¶ 23    We also note respondent's argument that petitioner's request for an accounting is an attempt to avoid her waiver of discovery. We note that an accounting is a remedy rather than a discovery device. *Kerasotes v. Estate of Kerasotes*, 238 Ill. App. 3d 1020, 1030 (1992). Thus, we cannot construe the parties' waiver of *discovery* as foreclosing the remedy of an *accounting* (We are cognizant that the parties' waiver also encompassed a "forensic accounting"; "forensic" simply means "[u]sed in or suitable to courts of law or public debate" (Black's Law Dictionary 660 (7th ed. 1999)); thus, the parties were not referring to the specific equitable remedy of accounting when they included the term "forensic accounting" in the waiver.). Moreover, while it is true that the parties waived their respective rights to discovery, they both warranted full disclosure, and they agreed to the creation of a trust. An accounting is a typical remedy for the breach of a fiduciary duty. See *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 78-79 (1994); *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 653 (1995); *Cook County v. Barrett*, 36 Ill. App. 3d 623, 634 (1975). Hence, by agreeing to the formation of a trust, thereby placing fiduciary duties upon respondent, the parties made applicable the remedy of accounting. In construing a contract, more specific provisions

control over more general provisions. *R.W. Dunteman Co. v. Village of Lombard*, 281 Ill. App. 3d 929, 936 (1996). The MSA is a contract. *In re Marriage of Hendry*, 409 Ill. App. 3d 1012, 1017 (2011). Here, the more specific provisions establishing respondent's role as a trustee control over the parties' more general waiver of discovery, assuming, *arguendo*, it is relevant as to time.

¶ 24 Finally, we find unpersuasive respondent's efforts to characterize petitioner's motion for an accounting as an attempt to reopen discovery. While an accounting will surely involve identifying certain documents, it is consistent with the enforcement of respondent's duties as trustee. When the parties entered into an agreement that created an express trust, the enforcement of these duties was within their contemplation. Parties, of course, may contract for a particular remedy. *Geist v. Lehmann*, 19 Ill. App. 3d 557, 564 (1974). It would defy logic to hold that the parties created an express trust but intended no remedy.

¶ 25 Further, respondent's interpretation of the MSA provision regarding the waiver of discovery fails to comprehend the difference between a waiver of discovery up to the time of the adoption of the MSA and a waiver of discovery in *futuro* and in perpetuity. Much of the documentation that petitioner sought involved the period after the dissolution of the marriage. Were we to preclude all future discovery, we would emasculate equitable principles in general and, specifically, the ability to remedy breaches of fiduciary duties. Such a preclusion would be inconsistent with the basic concept of equitable jurisdiction intervening to prevent such injustices.

¶ 26 In addition, we cannot condone and encourage the use of such a waiver as both a sword and a shield. Paragraph 9.14 of the MSA stated in part:

"ROY and DIANE acknowledge and warrant that they have disclosed to one another all property in which they have an interest, individually or jointly, present or contingent, and any property held by another that could be considered non-marital, marital or divisible

under the terms of the PNA and the IMDMA for their benefit in connection with the negotiation of this Agreement." (Emphasis added.) Petitioner has alleged that respondent has committed a fraud in both his acknowledgement and warranty that he had disclosed all of his interests and his continued actions after the dissolution judgment. Respondent is attempting an inequitable use of the waiver of discovery to prevent investigation of his allegedly fraudulent acknowledgement and warranty as well as his alleged continued postjudgment fraudulent activity. In the context of a section 2-1401 petition (735 ILCS 5/2-1401(c) (West 2018)), this court has held that a petitioner's decision to forgo formal discovery in a dissolution case was not a *per se* lack of diligence. See *IRMO Brubaker*, 2022 IL App (2d) 200160, ¶ 33. Similarly, we will not say here that petitioner's waiver of full discovery can be a *per se* bar to thwart investigation of respondent's alleged fraudulent activities.

¶ 27 In conclusion, petitioner has pleaded facts sufficient to support an action for an accounting, and the trial court erred in dismissing petitioner's motion seeking one. We note that petitioner sought the turnover of various documents in her motion for an accounting. We express no opinion regarding the propriety of any specific request, and we leave it to the trial court to address the propriety of any such particular requests as they relate to the accounting.

¶ 28                      B. Motion To Distribute

¶ 29 We now turn to the trial court's dismissal of petitioner's motion to distribute. Petitioner points out that one of the statutory remedies for "breach of trust" is to "compel the trustee to redress a breach of trust by paying money, restoring property, or other means." 760 ILCS 3/1001(b)(3) (West 2020). In his motion to dismiss, respondent asserted that he held no fiduciary duty to petitioner and that the parties' waiver of discovery and attestation of knowledge defeated any claim

concerning purportedly undiscovered assets. We have addressed and rejected these two arguments above. Respondent also argued that petitioner failed to allege any damages.

¶ 30    Generally, to state a claim for breach of fiduciary duties, a plaintiff must plead facts that satisfy the following elements: "(1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1010 (2010). Petitioner's claims of an injury are conclusory. Essentially, petitioner claims that she was deprived of 50% of some unknown, undisclosed asset. Conclusory pleading is insufficient. *Alpha School Bus Co., Inc. v. Wagner*, 391 Ill. App. 3d 722, 735 (2009).

¶ 31    However, a motion to dismiss based on the failure to plead an element of a cause of action falls under section 2-615 of the Civil Practice Law (735 ILCS 5/2-615 (West 2020)). Pursuant to that section, a motion to dismiss should be granted "with prejudice only if it is apparent that the plaintiff can prove no set of facts that will entitled him or her to recover." *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008). Under the present circumstances, we cannot say this is the case, as the accounting may lead petitioner to other facts that would allow her to prevail here. The same can be said of respondent's complaint that petitioner did not identify what business opportunities she may have missed due to respondent's mismanagement of the trust.

¶ 32    Accordingly, we reverse the trial court's dismissal of the motion to distribute as well.

¶ 33                    C. Motion To Amend

¶ 34    In her second appeal, petitioner contests the trial court's refusal to allow her to amend her complaint to add two counts. The trial court held that petitioner could not proceed with her amendment while petitioner's first appeal was pending. We have now resolved petitioner's first appeal. An issue is moot when no actual controversy remains and resolution of the issue would

have no practical effect on the proceedings. *ChiCorp, Inc. v. Bower*, 336 Ill. App. 3d 132, 137 (2002)). Having resolved petitioner's first appeal, it will no longer serve as a bar to petitioner amending her complaint on remand. Accordingly, petitioner's second appeal is moot. *People v. McNulty*, 383 Ill. App. 3d 553, 558 (2008) ("When the issues involved in the trial court no longer exist due to intervening events that have rendered it impossible for the appellate court to grant effectual relief to defendant, the case is moot.").

¶ 35                    IV. CONCLUSION

¶ 36    In light of the foregoing, the judgment of the circuit court of Du Page County at issue in petitioner's first appeal (No. 2-21-0408) is reversed. Petitioner's second appeal (No. 3-22-0037) is dismissed. We remand this cause for further proceedings.

¶ 37    No. 2-21-0408, Reversed and remanded.

¶ 38    No. 3-22-0037, Dismissed and remanded.